UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PENO WASHINGTON,

                    Petitioner,                          Case Number 2:14-cv-10532
                                                         Honorable Sean F. Cox

JOE BARRETT,

                    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION
TO APPEAL _IN FORMA PAUPERIS_**

This matter is before the Court on Petitioner Peno Washington's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner was convicted in the Oakland Circuit Court of possession of between 50 and 450 grams of cocaine, MICH. COMP. LAWS § 333.7403(2)(a)(iii), and possession of marijuana. MICH. COMP. LAWS § 333.7403(2)(d). As a result of these convictions Petitioner was sentenced as a fourth-time habitual felony offender to 99-to-240 months imprisonment for the cocaine conviction and 25 days for the marijuana conviction. The petition raises three claims: 1) the evidence presented at trial was insufficient to show that Petitioner constructively possessed the drugs, 2) the trial court erred in failing to give a "mere presence" jury instruction, and 3) defense counsel was ineffective or the prosecutor withheld exculpatory evidence when a jail property receipt regarding Petitioner's footwear was not presented at trial. The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability, but will grant him permission to proceed on appeal _in forma pauperis_.

## I. Facts and Procedural History

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals,

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v.*

*Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the seizure of cocaine and marijuana during the execution of a search warrant at a 900-square foot, one-story, two-bedroom house in Pontiac. Defendant did not own the house, had a different residence, and was not the person named in the search warrant. During pre-raid surveillance, officers observed numerous short-term visits by different unidentified individuals. When the police entered the house, defendant was the sole occupant and was found in the front living room where the cocaine and marijuana were discovered hidden in a sectional sofa. The prosecutor's theory at trial was that defendant constructively possessed the cocaine and marijuana. The defense argued that defendant did not live in the house and had no knowledge of the concealed drugs.

*People v. Washington*, No. 300360, 2012 WL 2335936, at *1 (Mich. Ct. App. June 19, 2012).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan

Court of Appeals, and he was appointed appellate counsel. Appellate counsel filed a motion to

remand, raising the following claims:

> I. Where a police officer linked defendant-appellant Peno Washington to the house where drugs were kept and sold by testifying that he saw Mr. Washington put on tan work boots the same size as the other shoes found in the house, and where the jail's clothing receipt would have contradicted that claim by showing that Mr. Washington instead wore black shoes, trial counsel was ineffective for not discovering and using the receipt to impeach the police officer. In the alternative, if the prosecution knew of the receipt, it violated Mr. Washington's right to due process by not disclosing the document even without request by the defense.
>
> II. Remand is needed for appellate counsel to object to, and the trial court to correct, two guidelines-scoring errors.

On November 18, 2011, the Michigan Court of Appeals issued an order denying the motion

to remand "for failure to persuade the Court of the necessity of a remand at this time." Petitioner

moved for reconsideration, but the motion was denied on December 15, 2011. Petitioner then filed

his brief on appeal, raising the following claims:

> I. The evidence was insufficient to show that defendant-appellant Peno Washington constructively possessed the drugs hidden in the house in which he was arrested.
>
> II. Where Mr. Washington's defense was that he was merely present in the house in which the drugs were hidden, and where the prosecution argued that Mr. Washington might be an accomplice to the actual owner of the drugs, the trial court erred by refusing to give the uniform jury instruction explaining the concept of mere presence.
>
> III. Remand is needed for the trial court to correct a guidelines scoring error. OV 13 should have been scored 0 points, not 10, because [Washington's] record discloses no "continuing pattern of criminal behavior."

In an unpublished per curiam opinion, the Michigan Court of Appeals affirmed Petitioner's convictions but remanded for correction of the sentencing information report. *Washington*, 2012 WL 2335936, at *1.

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising what now form his three habeas claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Washington*, 822 N.W.2d 782 (Mich. 2012) (table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact and that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012). However,  a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may

rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III. Analysis

### A. Sufficiency of the Evidence

Petitioner's first claim asserts that insufficient evidence was presented at trial to establish that he possessed the drugs found at the house.

The clearly established Supreme Court standard for determining whether sufficient evidence was presented at trial to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 318-19 (internal citation and footnote omitted). Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle*, 200 F. 3d 987, 992 (6th Cir. 2000)(internal quotations omitted).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011). "Because rational people can sometimes disagree, the

inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* In fact, the *Jackson* standard "is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F. 3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009) (internal quotation marks omitted)). For a federal habeas court reviewing the sufficiency of evidence for a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065, 182 L. Ed. 2d 978 (2012).

> The Michigan Court of Appeals rejected Petitioner's claim as follows:

> Viewed in a light most favorable to the prosecution, the circumstantial evidence established a sufficient nexus between defendant and the contraband discovered in the home. During pre-raid surveillance, law enforcement officers observed numerous short-term visits by different individuals, which officers explained was indicative of drug trafficking. Defendant was not observed entering or leaving the premises during the hours of surveillance. When the search warrant was executed, defendant was the only person inside the relatively small house and he was in the same room—the living room—where 73.4 grams of cocaine and 26 grams of marijuana were hidden inside a sectional sofa. While the drugs were not in plain view, an expert in street level narcotics trafficking testified that drug dealers regularly hide their inventory to avoid theft or arrest and that furniture is a common place to conceal their supply. Defendant had $1,125 in his pockets, including 48 twenty dollar bills. According to the expert testimony, there is a typical quantity of crack cocaine, referred to as a "twenty," that is sold for $20. Drug packing materials, including a digital scale, plastic baggies, and multiple boxes of baking soda (used to make crack cocaine), were found in the kitchen, which was directly adjacent to where defendant and the contraband were found.

> Although defendant had a different residence, an expert explained that it is normal for drug dealers to sell drugs from vacant houses or houses belonging to their customers to avoid suspicion at their actual residences. Defendant repeatedly claimed that the house was owned by his aunt, but he did not know her last name and admitted that she was not his actual aunt. The police determined that the registered owner of the house died in 2007. The expert further explained that, given the amount

and street value of the seized contraband, it would be "extremely uncommon" and "very unusual" for a drug dealer to have left that inventory alone and unguarded in a Pontiac house. When the warrant was executed, defendant was in his stocking feet or bedroom slippers, and his size 12 boots were on the living room floor. In the master bedroom, officers found additional pairs of size 12 shoes, as well as size 3XL and 4XL clothing, which was consistent with defendant's large physique and with the size of the tee-shirt he was wearing.

The reasonable inferences arising from this evidence, considered together, are sufficient to support a finding that defendant was not simply present in the house, but was staying there and had control of the contraband that was found there. The same challenges to the weight and credibility of the evidence that defendant raises on appeal were made to the jury during trial. We will not interfere with the jury's role of determining issues of weight and credibility. *Wolfe*, 440 Mich. at 514. Rather, we must draw all reasonable inferences and make credibility choices in support of the jury's verdict, and our deferential standard of review "is the same whether the evidence is direct or circumstantial." *People v. Nowack*, 462 Mich. 392, 400 (2000). Accordingly, the evidence was sufficient to support defendant's convictions.

*Washington*, No. 300630, at *1-2 (Mich. Ct. App. June 19, 2012).

In order to convict a defendant under Michigan law of possession of a controlled substance, a prosecutor must prove that he or she exercised control or had the right to exercise control over the controlled substance. *See McFarland v. Yukins*, 356 F. 3d 688, 708 (6th Cir. 2004) (citing *People v. Konrad*, 449 Mich. 263 (1995)) (additional citations omitted). A defendant need not have actual physical possession of a controlled substance in order to be guilty of possessing it. *People v. Wolfe*, 440 Mich. 508, 519-20 (1992). Possession of a controlled substance may be actual or constructive. *Id.* "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Id.* at 521. Constructive possession of a controlled substance can be proven by circumstantial evidence. *See People v. McGhee*, 268 Mich. App. 600, 623 (2005). Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance. *People v. Williams*, 188 Mich. App. 54, 57 (1991).

The decision of the Michigan Court of Appeals that sufficient evidence was presented at

Petitioner's trial to demonstrate constructive possession of the drugs did not involve an unreasonable application of the clearly established Supreme Court standard. The evidence showed that Petitioner was found in the same room in which the drugs were hidden in a couch. A rational trier of fact could reasonably infer that Petitioner was seeking to conceal the cocaine from the raiding police officers. *See United States v. McGee*, 529 F.3d 691, 696 (6th Cir.2008). Also, Petitioner was the sole occupant of the house in which the cocaine was found. The fact that Petitioner was the only person in the house in which a significant amount of cocaine was seized is evidence from which a rational trier of fact could reasonably conclude Petitioner constructively possessed the cocaine. One would not expect another person "to have left [Petitioner] alone with such a large and valuable quantity of drugs." *U.S. v. Shull*, 349 F. App'x 18, 22 (6th Cir. 2009). Finally, the officers recovered a large sum of money from Petitioner's person in small denominations. Petitioner's possession of such a large amount of money in small denominations, while occupying the house containing a substantial amount of drugs, is further evidence that would support a reasonable inference that he constructively possessed them. *See United States v. Garcia*, 866 F.2d 147, 152 (6th Cir.1989).

Petitioner argues that the evidence can equally be viewed as showing that he happened to be located in the house when the drug-raid occurred, and he had no knowledge of the drugs. "It is well settled that when a defendant 'offer[s] an innocent explanation for the incriminating facts proved by the government, the jury is free to disbelieve [it].'" *United States v. Hughes*, 505 F.3d 578, 594 (6th Cir. 2007). And in any event, the question here is not merely whether sufficient evidence was presented to convince a rational fact-finder that Petitioner constructively possessed the drugs – it is whether the state appellate court's decision that the evidence was sufficient "was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S.Ct. at 2065.

Petitioner's claim does not approach this incredibly demanding standard.

## B. Mere Presence Jury Instruction

Petitioner's second claim asserts that the trial court erred in failing to give a jury instruction

charging the jury that "even if the defendant knew that the alleged crime was planned or was being

committed, the mere fact that he was present when it was committed is not enough to prove that he

assisted in committing it." Trial Tr. II, pp. 4-5.  The Michigan Court of Appeals rejected this claim

on the merits.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will

support a collateral attack upon the constitutional validity of a state court conviction is even greater

than the showing required in a direct appeal. The question in such a proceeding is whether the ailing

instruction so infected the entire trial that the resulting conviction violates due process — not merely

whether the instruction is undesirable, erroneous, or even "universally condemned." *Henderson v.*

*Kibbe*, 431 U.S. 145, 154 (1977). Indeed, "a habeas petitioner's burden of showing [a due-process

violation] is especially heavy when a petitioner claims that a jury instruction was incomplete

because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement

of the law." *Hardaway v. Withrow*, 305 F.3d 558, 565 (6th Cir. 2002).

The judge's failure to give the jury the mere presence instruction did not deprive Petitioner

of a fair trial. The jury was instructed that the prosecution had the burden to prove each element of

the offenses beyond a reasonable doubt. Trial Tr. II, pp. 84-85. The jury was instructed as to each

element, including that it must find that Petitioner possessed the drugs and knew that possessed

them. *Id*., p. 93. The jury was also instructed that "it is not enough if the defendant merely knew

about the cocaine and/or marijuana. The defendant possessed the cocaine and/or marijuana only if

he had control of them or the right to control them either alone or together with someone else." *Id*.,

p 94. The Sixth Circuit has rejected a similar claim made by a criminal defendant on a direct appeal

of a drug conviction from federal court. *See United States v. Frederick*, 406 F.3d 754, 764-65 (6th

Cir. 2005) ("[A]s long as the district court's instructions accurately state the law, a defendant is not

entitled to the choice of words he requests."). Because the instructions, as given by the trial judge,

adequately explained to the jury that Petitioner could not be convicted of possessing the cocaine

simply because he was inside of the house where the substance was discovered, the failure to give

the requested specific cautionary instruction did not deprive Petitioner of a fair trial. Thus, Petitioner

is not afforded habeas relief on this claim.

**C. Inmate Clothing Receipt**

Finally, Petitioner asserts alternative theories of relief regarding the failure of his counsel

to use a jail receipt to impeach the testimony of one of the arresting officers. This claim was

presented to the Michigan Court of Appeals in a motion to remand, which was denied by summary

order. Under binding precedent involving the use of the same form order, the summary adjudication

of the claim qualifies for §2254(d) deference. *See Nali v. Phillips*, 681 F.3d 837, 851-852 (6th Cir.

2012).

To prove ineffective assistance of counsel under federal constitutional standards, a defendant

must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the

circumstances, counsel's performance was so deficient that the attorney was not functioning as the

"counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Second, the defendant must show that such performance prejudiced his defense. *Id*. at 689. To

demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

As for Petitioner's alternate legal theory, the Due Process Clause requires the state to disclose exculpatory evidence to the defense. See *Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). To show prejudice, the petitioner must demonstrate that there is a reasonable probability that had the evidence been disclosed the result of the proceeding would have been different. *Strickler*, 527 U.S. at 280.

At Petitioner's trial, an ATF agent testified that when Petitioner was arrested he was wearing socks or slippers. Petitioner was also wearing a size XXXL shirt. The agent testified that he retrieved a pair of size 12 tan boots and assisted Petitioner to put them on. This testimony was used in connection with testimony that other pairs of size 12 footwear as well as size XXXL and XXXXL shirts were found in one of the bedrooms to show that Petitioner resided there. After trial, Petitioner's appellate counsel located an "Inmate Clothing Reciept" form from the Oakland County Jail cataloging the clothing Petitioner turned over before he was incarcerated. See ECF No. 10-20. The preprinted form lists common articles of clothing, and under the heading of "SHOES" it indicates a quantity of two, and the description "Blk." Petitioner asserts that this form could have been used to impeach the credibility of the ATF agent's account of the circumstances of the arrest, including what items were found in the house, because he testified that Petitioner wore tan boats when he was arrested. He asserts that either his trial attorney was ineffective for failing to locate and use the form or that the prosecutor suppressed this impeachment evidence.

Both legal theories advanced by Petitioner require him to show a reasonable probability that use of the clothing receipt to impeach the ATF agent would have altered the outcome of the trial. The argument that the form suggests Petitioner was wearing shoes instead of boots is unconvincing. The form lists "SHOES" as a broad catagory that would properly be understood to refer to any type of footwear. The deputy filling out the form did not use precise descriptions of the various items. The scribbled entries simply indicate "BW" next to the "PANTS" article, "WHITE" next to the "SHIRT" article, and "BLK" next to the "SHOES" article. The fact that the form might suggest Petitioner was booked into the jail wearing black footwear rather than tan footwear is therefore not the type of impeachment evidence that, with reasonable probability, would have altered the outcome of the trial. As Respondent correctly points out, had the form been more specific and listed a shoe size other than 12, then it might have been more useful to the defense to show that Petitioner wore a different size shoe than the other footwear found in the house.

Even if the agent's credibility could be called into question by the discrepancy, the fact remains that Petitioner was found alone in the house with a large sum of money in small denominations on his person in a room where the drugs were hidden. Scales, bags, and cutting material were located in the open. Petitioner told police that the house belonged to his aunt, but subsequent investigation revealed that the owner was deceased. In light of the strong evidence of his guilt, there is no reasonable probability that a mistake or a misrepresentation about the color of Petitioner's footwear would have changed the outcome of the trial.  More to the point, the summary rejection of the claim by the state courts did not result in an unreasonable application of either the *Strikland*  or *Brady* standards. Petitioner's third claim is therefore without merit.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.

The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of his claims. The Court will, however, grant Petitioner permission to appeal *in forma pauperis*, because an appeal would not be frivolous.

### V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to appeal *in forma pauperis* is **GRANTED**.

Dated:  June 22, 2015                                  S/ Sean F. Cox
                                                       Sean F. Cox
                                                       U. S. District Judge

I hereby certify that on June 22, 2015, the foregoing document was served on counsel of record via

electronic means and upon Peno Washington via First Class mail at the address below:

PENO WASHINGTON 273096
COOPER STREET CORRECTIONAL FACILITY
3100 COOPER STREET
JACKSON, MI 49201

S/ J. McCoy
Case Manager
